UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES M. DAILEY,

    Petitioner,

-vs-                                      Case No. 8:07–cv-1897-T-02AAS

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## ORDER

Before the Court are Dkt. 96 and Dkt. 97, Petitioner Dailey's Motion for Relief from Judgment pursuant to Fed. R. Civ. P. 60(b)(6), and the State's Response, Dkt. 112. The Court denies the Motion. The Court provides a short preface to this Order to describe an overview of this Court's thinking.

## PREFACE

The thesis of the motion is that Dailey's collateral lawyers were constitutionally ineffective. Trial lawyer failures were ignored, waived, or not sufficiently highlighted by his collateral habeas counsel, and Dailey was denied a fair and complete collateral, habeas review of his conviction and sentence. Poor lawyering by habeas counsel, according to the Motion, caused vital points to be defaulted on collateral review. And this was made worse by the conflict of

interest among successor habeas counsel, who were not able to call attention effectively to the incompetence of their own colleagues who formerly handled Dailey's collateral litigation.

The remedy sought is a Rule 60(b)(6) reopening of Dailey's federal habeas judgment in this case, Dkts. 27, 38, 41, & 42, to permit the undersigned to reconsider all of Dailey's collateral issues that were procedurally barred or not otherwise presented to U.S. District Judge Whittemore in this section 2254 habeas case in 2007. Dailey contends his trial counsel were ineffective, Dkt. 96 at 21, his first state habeas counsel were ineffective, *id.* at 23, and his second or successor habeas counsel were ineffective, *id.* at 2, 28. The gravamen of the motion (probably to avoid being deemed a successive habeas petition)[1] is that both the first and successive Capital Collateral Regional Counsel teams for Dailey were ineffective, and this failure is cognizable under *Martinez v. Ryan,* 566 U.S. 1 (2012).

As part of this theme, and as part of the present effort to avoid what may be an impeding execution, Dailey's lawyers seek to marshal and restate evidence from

---

[1] The State's Response addresses this Motion primarily as a Fed. R. Civ. P. Motion rather than a successive habeas petition. This Court agrees because the matter complained of is the presentation before this instant Court of reviewable issues, rather than an attempt to overturn the State judgment or sentence. Accordingly, Rule 60(b)(6) is implicated. *Gonzalez v. Crosby*, 545 U.S. 524, 537 (2005) (directing courts to consider under Rule 60(b)(6) if the issue "does not assert, or reassert, claims of error in the movant's state conviction").

this lengthy 34-year old record to cast doubt upon the verdict. Although energetic lawyering, the effort is selective.

Dailey asks this Court to undertake a "holistic analysis of the facts and circumstances to determine whether relief is warranted." Dkt. 96 at 19. Although it is not the Court's province at this stage 34 years later to adjudicate evidentiary sufficiency and retry the case, the Court has personally read every single page of this lengthy record. A thorough review shows the State's trial case against Dailey was not strong, but it was sufficient. It was made stronger by several acts by Dailey, such as his physical appearance after the murder, his inexplicable flight to Miami, and his jailhouse correspondence with Pearcy. Dailey's defense is further marred by his implausible post-trial testimony which sought to explain this unusual flight and to explain Dailey's appearance after the murder. Dkt. 33 D-3 291–318.

This is not the place or remedy to restate the case against Dailey and weigh why he is facing the death penalty. The Court here provides but two examples of misguided points made by Mr. Dailey in his selective portrayal of the record. First, in several of his later motions, Mr. Dailey cites a 2017 affidavit of codefendant Pearcy, that states Pearcy alone, and not Dailey, murdered the victim. Dkt. 96-11. The affidavit is typical of latter day exculpatory affidavits seen on occasion from codefendants. It was created by Dailey's able lawyers for this purpose and in it Pearcy promised to testify as to the exculpation of Dailey. Fortunately, the state

3

court took up Pearcy's promise and held an evidentiary hearing on this 2017 affidavit. There Pearcy, in person, entirely failed to substantiate its truth, and took the Fifth Amendment as to all the merits of the affidavit. Yet Dailey touts this affidavit now.

This 2017 affidavit is an item of sworn Pearcy hearsay in this record, which Pearcy declined to substantiate from the witness box. But if one were to consider sworn hearsay statements in this record of Mr. Pearcy, a more apt selection might be his 40-page sworn statement in June 1985 during the State's Attorney investigation. Dkt. 33 D-9. In that statement, soon after the crime, Pearcy explained the details of the murder. He explained in detail how Dailey butchered and drown the 7th-grade girl during a rape; Pearcy denied stabbing or assaulting the victim—admitting his participation later. Pearcy's statements in that lengthy sworn interview are consistent with physical facts of the case, even down to the vomit that he emitted upon seeing the slaughter, which was found the next day near where the victim bled.[2] Both the 1985 sworn statement, and the 2017 affidavit now touted by Dailey, are not admissible at a criminal trial. But surely the former, more contemporaneous by 32 years, has equal or greater salience in a "holistic analysis of the facts and circumstances" on this record as requested by Dailey.

---

[2] The Medical Examiner testified that the vomit did not match the contents of the victim's stomach. Trial Tr. at 880, Dkt. 33 A–7.

4

The Court offers a second example of how a holistic review of this record urged by Dailey does not help him much. Mr. Dailey's counsel have decried the use of jailhouse informant testimony. That type of testimony is often fraught with problems and, in the undersigned's view, is too frequent in criminal prosecutions. But the testimony of the two jail librarian informants was backed up by four notes they passed at Dailey and Pearcy's request. These notes are in Dailey and Pearcy's hand. The trial judge admitted as evidence the notes written by Dailey. All four notes are present in this record, and should be considered as part of any "holistic review." Dkt. 33 A-2 175–80. The four items inculpate Mr. Dailey. They are consistent with co-actors ("partners" as Dailey says in one note) who are trying to game their respective trials. One of Pearcy's notes expressly implicates Dailey as murderer, consistent with Pearcy's SAO statement. The notes in Dailey's hand are inculpatory and inconsistent with the facts as he now portrays them. And, these contemporaneous notes are entirely consistent with, and well buttress, the librarians' damning trial testimony.

## CASE HISTORY

In 1987 a jury found Mr. Dailey guilty of the murder of Shelley Boggio and unanimously recommended a death sentence which the judge imposed. The Florida Supreme Court upheld the conviction but reversed the sentence. *Dailey v. State*, 594 So. 2d 254, 259 (Fla. 1991). The trial court resentenced Dailey to death which

was affirmed by the Florida Supreme Court and certiorari was denied. *Dailey v. State*, 659 So. 2d 246, 247 (Fla. 1995), *cert. denied,* 516 U.S. 1095 (1996). The state circuit court denied Dailey's initial postconviction relief after briefing, a legal hearing, and five evidentiary hearings. Dkt. 33 D-2. The Florida Supreme Court affirmed the denial of Dailey's initial postconviction motion and denied his petition for a writ of habeas corpus. *Dailey v. State*, 965 So. 2d 38, 41–42 (Fla. 2007).

This Court (per Whittemore, J.) dismissed part of Mr. Dailey's federal habeas petition as procedurally barred and for failing to allege a federal constitutional claim. *Dailey v. Sec'y, Fla. Dep't of Corr.*, No. 8:07-CV-1897-T-27MSS, 2008 WL 4470016, at *10 (M.D. Fla. Sept. 30, 2008) (Dkt. 27). After briefing on the remaining claims, this Court denied the remainder of Mr. Dailey's federal habeas petition. *Dailey v. Sec'y, Fla. Dep't of Corr.*, No. 8:07-CV-1897-T-27MAP, 2011 WL 1230812, at *32 (M.D. Fla. Apr. 1, 2011) (Dkt. 38), *amended in part*, *vacated in part*, No. 8:07-CV-1897-T-27MAP, 2012 WL 1069224 (M.D. Fla. Mar. 29, 2012) (Dkt. 41). The Eleventh Circuit denied the motion for a certificate of appealability and the Supreme Court denied certiorari. Dkts. 46 & 47.

The Florida Supreme Court affirmed the denial of Dailey's first successive postconviction motion. *Dailey v. State*, 247 So. 3d 390, 391 (Fla. 2018). In October 2019, the Florida Supreme Court affirmed the state circuit court order denying in

part and dismissing in part Dailey's second successive postconviction motion. *Dailey v. State*, 279 So. 3d 1208, 1218 (Fla. 2019), *reh'g denied*, No. SC18-557, 2019 WL 5152446 (Fla. Oct. 14, 2019). In November 2019, the Florida Supreme Court affirmed the state circuit court order denying in part and dismissing in part of Dailey's third successive postconviction motion. *Dailey v. State*, No. SC19-1780, 2019 WL 5883509, at *7 (Fla. Nov. 12, 2019).

## LEGAL STANDARDS

Daily faces three difficult legal standards in this Motion. First, in its relevant part, Fed. R. Civ. P. 60 states:

> **60(b):** On motion and just terms, the court may relieve a party or its legal representatives from a final judgment, order, or proceeding for the following reasons:
>
> ….
>
> **(6):** any other reason that justifies relief
>
> ….
>
> **(c)(1):** A motion under Rule 60(b) must be made within a reasonable time.

A movant seeking relief under Rule 60(b)(6) must show "extraordinary circumstances" justifying the reopening of the final judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (affirming denial of Rule 60(b)(6) relief). The Supreme Court noted "such circumstances will rarely occur in the habeas context." *Id.*

The second legal standard Dailey must surmount relates to his claim that his collateral, habeas counsel were constitutionally ineffective in preserving and presenting claims or error. He suggests that this impaired a fair resolution of his federal habeas in this case, resulting in Judge Whittemore denying his federal habeas claims. "[T]he standard for judging counsel's representation is a most deferential one." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). It is "all too tempting" for a court to "second-guess counsel's assistance," especially if that assistance did not succeed. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). Yet unlike a future court, the attorney was present at the proceedings and interacting with the client, opposing counsel, and with the judge—necessitating real-time strategic decisions. Hence, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* In that light, counsel is ineffective under the Sixth Amendment only if "(1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense such that petitioner was deprived of a fair trial [or in this case a fair habeas presentation]." *Dill v. Allen*, 488 F.3d 1344, 1354 (11th Cir. 2007) (citing *Strickland*, 466 U.S. at 687).

Because Dailey eventually must prove (if he can reopen federal habeas) that his trial lawyers were deficient, this imposes another burden. In the habeas context, "[t]he question is not whether a federal court believes the state court's

determination under the *Strickland* standard was incorrect but whether it was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citation and internal quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied *Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (citation omitted).

Finally, Dailey must meet a third hurdle that is more akin to a roadblock. *Martinez v. Ryan*, does not apply to freestanding claims for ineffective assistance of collateral counsel, nor ineffectiveness in successive collateral proceedings. Nor does *Martinez v. Ryan* create a new rule of constitutional law. *See Lambrix v. Secretary,* 756 F.3d 1246 1260–63 (11th Cir. 2014); *Chavez v. Secretary*, 742 F.3d 940 11th Cir. 2014). The *Martinez* opinion was rendered during the pendency of Dailey's federal habeas, but five years after he filed his petition, and no effort was made to amend his petition before Judge Whittemore or to assert this type claim here until this instant motion.

## LEGAL ANALYSIS

The impression this entire record gives the reviewer is that in the 34 years since this crime, Mr. Dailey has not suffered from constitutionally defective counsel, whether from his trial defense by experienced lawyers to present. His counsel may not have always been ones he liked or preferred, and they might not

9

always have been as responsive to him as preferable. Yet, Dailey had a competent team; one cannot review the underlying record in this federal docket and conclude that the habeas lawyers representing Mr. Dailey before Judge Whittemore here were beneath the *Strickland* standard. They were able. *See, e.g.*, Dkts. 1, 17, 21, 26, 40. And their claimed faults—if faults there be—do not undermine a confidence in this bleak outcome.

The present motion decries lost, waived, or foregone issues on collateral review. But effective criminal defense lawyers know that one has to winnow and carefully select what issues to bring—each claim cheapens its brother so strategic winnowing must apply. Like green shoots in a garden, potentially viable post-conviction claims must die in order to bring strong light to others more promising.

In the perfect light of hindsight, especially after a long (and eventually failing) defense road, one can argue other issues should have been presented, and different ones culled by the defense lawyer. And some of these claims recently touted, like those related to the librarian informants and/or Pearcy's affidavit, appear worthy of culling even now.

Dailey's federal habeas counsel do not appear constitutionally ineffective upon this record. Accordingly, the 63-page Rule 60(b)(6) motion (and its lengthy appendix) fail to establish "extraordinary circumstances" to reopen Judge Whittemore's sound federal habeas judgment in this case. Justice does not so

require. This is consistent with the Supreme Court's teachings that "such circumstances will rarely occur in the habeas context." *Gonzalez,* 545 U.S. at 535.

Finally, even if this Court found that the sundry factual allegations set forth in the Motion along with *Martinez v. Ryan* constituted extraordinary circumstances, the limited reach of *Martinez v. Ryan* does not excuse or assist Dailey with the statutory time limitations imposed (which are long passed) for habeas claims. *See, e.g.*, *Chavez*, 742 F.3d at 946 ("we have rejected the notion that anything in *Martinez* provides a basis for equitable tolling.") (citing 28 U.S.C. 2244(d)). The Court sets additional discussion of *Martinez* forth in the margin.[3]

---

[3] *Martinez* created a narrow exception to the requirement that all habeas claims be procedurally exhausted in state court before being challenged in federal habeas proceedings. *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 945 (11th Cir. 2014) (citing to *Martinez*, 566 U.S. at 6–12). *Martinez* did not create a freestanding claim for challenging a conviction or sentence based on allegedly ineffective assistance of state post-conviction counsel. *Id.* at 944("The Supreme Court has long held that there is no constitutional right to counsel in post-conviction proceedings, even in capital cases, which necessarily means that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of counsel in such proceedings.").

The Eleventh Circuit has construed *Martinez* narrowly. *See Luciano v. Sec'y, Dep't of Corr.*, 701 F. App'x 792, 793 (11th Cir. 2017). *Martinez* does not serve as an adequate basis for a second or successive habeas petition. *Chavez*, 742 F.3d at 946. Nor does *Martinez* toll the one-year statute of limitations for seeking federal habeas relief. *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014). And it is clear under binding Eleventh Circuit precedent that "the change in the decisional law affected by the *Martinez* rule is not an 'extraordinary circumstance' sufficient to invoke Rule 60(b)(6)." *Arthur*, 739 F.3d 631; *see also Hamilton v. Sec'y, Fla. Dep't of Corr.*, 793 F.3d 1261, 1266 (11th Cir. 2015).

In short, binding precedent in this Circuit precludes Dailey from using *Martinez* to raise new claims regarding the procedurally defaulted claim of ineffective assistance of trial counsel or challenge the sufficiency of his postconviction counsel. Any claim made by Dailey regarding the sufficiency of his trial counsel is now time barred by AEDPA. Further, this Court would have no jurisdiction over any such claim because it would be second or successive and would require authorization from the Eleventh Circuit. *Chavez,* 742 F.3d at 946. Any claim by Dailey for ineffective assistance of postconviction counsel "would be futile because those claims could not

11

The Motion is denied. Dkt. 96. The Court has considered the standard for a certificate of appealability, *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). A certificate is denied.

**DONE AND ORDERED** at Tampa, Florida, on December 10, 2019.

<u>*/s/ William F. Jung*</u>
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

---

form the basis for relief." *Id.* (internal quotation omitted).